# FRED J. PARAMORE et al. v. JAMES CAMP-
BELL, Appellant.

### Division One, July 11, 1912.

1. **WRITTEN CONTRACT: Explained by Parol Evidence.** Where the written contract is ambiguous on the point of whether it creates an agency or an option contract, evidence *aliunde* may be admitted in order to get at its proper construction.

2. **CONTRACT: Agency: Optional Contract of Sale: Expense.** Where owners of judgments against a county agreed with defendant that if he would at his own expense procure a settlement with the county he could have an assignment of their judgments and ninety cents of their face value, and pay them in cash or with new bonds bearing three and one-half per cent interest, as he might elect, the contract was not one of agency, but was an optional contract of sale. The fact that defendant was to bear all the expense of the settlement, does not bespeak an agency; and the further fact that defendant was to receive nothing unless he made a settlement for more than ninety cents on the dollar makes it clear that there was no agency; and hence defendant was entitled to retain all the bonds he received in excess of ninety per cent of the face value of the judgment.

3. ———: ———: ———: **Fiduciary Relation: Modification.** And there being no contract of agency, but one for an optional sale, there was no fiduciary relationship, and the law pertaining to that subject has no place in the case, and no place in a consideration of a subsequent modification of the contract by which defendant was to pay to the owners of the judgments an agreed sum in lieu of the ninety per cent.

4. ———: ———: ———: ———: ———: **Concealment.** Where the owners of two judgments against a county agreed with defendant that he could settle them for ninety cents on the dollar, and pay them cash or new bonds bearing three and one-half per cent, as he might elect, and it was subsequently discovered that the two judgments with accumulated simple interest had been merged into a later judgment, and thus interest was made to bear interest, and thereby the amount of the merged judgment was greater than the amount of the two separately calculated to date of settlement, and the county insisted that the settlement should be made to embrace the merged judgment, and thereupon defendant wrote to plaintiffs (the owners) stating the county would settle by an issue of four per cent bonds for ninety per cent of the original judg-

ments, and that, if settlement was made on that basis, he would give them a certain amount of four per cent bonds whose face would equal ninety per cent of the face of the original judgments, and they in reply accepted those terms, they are entitled to only that named sum of four per cent bonds, and cannot complain that he concealed from them that he was actually receiving 94.4 per cent of the original judgments, or (what amounted to the same thing) ninety per cent of the merged judgment. No fiduciary relation existed between him and them at the time he so wrote them. he could under the existing option agreement have settled with them with bonds equal to ninety per cent of the original judgments, and he concealed from them nothing to which they were entitled, and they profited by getting four per cent instead of an equal amount of three and a half per cent bonds.

5. ———: **Settlement.** Before there can be said to be a settlement of a disputed claim the facts must show a final agreement by both parties.

6. ———: **Theory of Trial.** Where on the trial below the sole contention was whether plaintiffs were entitled to eighty or seventy bonds, and it appears that defendant offered to deliver to them seventy bonds if they would receipt in full, the court will not on appeal decide whether defendant under his option agreement is entitled to all the bonds.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Richard L. Goode* for appellant.

(1) This is a contest for the possession of specific property, i. e., certain bonds, and for either plaintiffs or defendant to prevail, they or he must establish a superior legal or equitable title to the property. It is not merely a case for some kind of equitable relief. In an interpleading between parties, the question is as to their respective titles to the very fund or property in dispute. 23 Cyc. 8, par. 5; Maclennan Interpleader, pp. 121, 180, 182, 191, 238, 269, 281 282; Story's Eq. Pl., Secs. 291, 196; Windicker v. Ins. Co., 12 App. Div. (N. Y.) 73; Railroad v. Corwith, 5 N. Y.

Supp. 792. (2) And while the rights of the claimants to the property in dispute may be determined when they rest on either legal or equitable titles or both, yet always the proceeding is contest over titles. 23 Cyc. 19; Maclennan Interpleader, p. 121. (3) According to the contract between plaintiffs and Campbell, all the funding bonds were to be delivered to Campbell, and he was to deliver seventy to plaintiffs on demand. Hence, plaintiffs have shown no legal title to any of the bonds, and no title, either legal or equitable, to more than seventy of them (i. e., none to the other ten in dispute), whatever case for an accounting or other redress they may have against Campbell personally. Fraud in inducement renders a contract voidable, not void, and until it is rescinded, property and money parted with on the strength of it cannot be recovered. Hence to get behind this contract and obtain a decree for the delivery of more bonds to them than it calls for, plaintiffs must have it rescinded and set aside, for until that is done it will determine who has title and right to the bonds. 9 Cyc. 431-433; Mitchell v. Parker, 25 Mo. 31; Oakes v. Railroad, 130 Mo. 27; Yeater v. Hines, 24 Mo. App. 619; Implement Co. v. Ellis, 125 Mo. App. 692; Blackman v. McAdams, 131 Mo. App. 408. (4) As consideration for his contract with the plaintiffs Campbell relieved them from payment of any part of the expense of procuring the settlement with the county. Plaintiffs neither offered to reimburse him to this extent, nor to do equity generally, nor even prayed for concellation and rescission of the contract. The decree of the court below took no account of what Campbell was out by way of consideration for the contract, and did not decree rescission of it, but simply ignored it and ordered delivery of all the eighty bonds to plaintiffs as though no contract had ever been made with Campbell, and he had parted with no consideration.

That judgment ignored the rule that he who seeks equity must do .equity, and cannot stand. Smith on Fraud, Secs. 133; 138; Jarrett v. Morton, 44 Mo. 277; Feld v. Inv. Co., 123 Mo. 603; Danforth v. Crookshanks, 68 Mo. App. 311; Miller v. Crigler, 83 Mo. App. 395; Culbertson v. Young, 86 Mo. App. 277. (5) The agreement between the parties being documentary, its terms and legal effect must be ascertained in the absence of fraud, solely from the documents. Dexter v. MacDonald, 196 Mo. 373; Boggs v. Laundry, 86 Mo. App. 616. (6) To conceive of the contract between the plaintiffs and Campbell as an authority to Campbell to represent the plaintiffs as their agent in a settlement with Cass county, is to misconceive it. In form and effect, it was a privilege or option granted to him by them, and for which he paid, to settle their judgments with them, by delivering to them seventy bonds, in the event the county voted to compromise its judgment debts by issuing bonds. Anderson v. Weiser, 24 Iowa, 428; Synnott v. Shaughnessey, 2 Idaho, 122; Elevator Co. v. Hale, 201 Ill. 131; Ranney v. Barlow, 112 U. S. 207. (7) The alleged misrepresentations regarding the terms of settlement which had been proposed to the county prior to the execution of the contract, even if they occurred, are not ground for rescission or other relief, for two reasons: (a) They did not induce the contract; (b) No damage resulted to plaintiffs in consequence of them. Smith, Fraud, Secs. 126-144; 9 Cyc. 431; 1 Page, Contracts, Sec. 126; Smith v. Dye, 88 Mo. 581, 15 Mo. App. 585; Wannell v. Kem, 57 Mo. 478; Powell v. Adams, 98 Mo. 598. (8) The evidence fails to show any fraudulent misrepresentation by Campbell. Fraud must be proved either by testimony or circumstances, and cannot be based on suspicion and conjecture. Waddingham v. Loker, 44 Mo. 132; Priest v. Way, 87 Mo. 16; Thrasher v. County, 105 Mo. 244; Martin v. Estes, 132 Mo. 402; Kilpatrick v. Wiley, 197 Mo. 159; Shoe Co. v. Casebeer, 53 Mo. App. 640. It

must be established by the party alleging it, and will not be presumed, but rather fair dealing and honest motive, when these stand as well with the facts. Shoe Co. v. Casebeer, 53 Mo. App. 640; Bernecker v. Miller, 44 Mo. 102; Basye v. Jamison, 124 Mo. 551. (9) The supposed contract of settlement with Campbell to which E. E. Paramore testified, is not ground of relief, if made, because the conduct of plaintiffs amounted to a renunciation or abandonment of it. 9 Cyc. 637; Henry v. Bassett, 75 Mo. 89. (10) Plaintiffs virtually concede in their answer in their testimony, and everywhere from first to last, that if Campbell had settled with the county at ninety per cent of the principal and interest of their judgments, they would have been entitled to only seventy bonds. But having settled for 94.4 per cent, as they say, instead of demanding for themselves the seventy bonds plus the 4.4 per cent excess and leaving Campbell the remainder, which their own version entitles him to, they demand the seventy bonds plus ten, and propose to leave him the 4.4 per cent. This is the effect of the decree, and is not only an inequitable, but an irrational result. Campbell, in any event, would only be bound to account for the surplus he made and plaintiffs only entitled to that much.

*Block & Sullivan* for respondents.

(1) The rule forbidding one to take profit at the expense of those for whom he is acting, controls every person "acting representatively." Dent v. Bennett, 4 Mylne & Cr. 277; Buffelow v. Buffelow, 2 Dev. & Bat. Eq. 250; Cadwallader v. West, 48 Mo. 496; Ryan v. Ryan, 174 Mo. 286; Sims v. Sims, 101 Mo. App. 418; Tate v. Williamson, L. R. 2 Ch. App. 60; 2 Pomeroy Eq. Jur. (3 Ed.), Sec. 956; Bellage v. Southee, 9 Hare, 540; Ins. Co. v. Smith, 117 Mo. 295; Bingham v. Sheldon, 101 App. Div. (N. Y.) 52; Rea v. Copelin, 47 Mo. 83. (2) The paper of March 12

was but the creation of an agency. Meek v. Hurst, 223 Mo. 693. (3) One who is ácting for another may not contract with him regarding the matter to his own profit, without the most complete disclosure of all material circumstances. Cases supra; Kanada v. North, 14 Mo. 615; Euneau v. Rieger, 105 Mo. 677; Exter v. Sawyer, 146 Mo. 321; Dennison v. Aldrich, 114 Mo. App. 708; McKinley v. Williams, 74 Fed. 94. (4) Appellant having made positive misrepresentations and respondents being ignorant of the facts—they may avoid their agreement so induced, notwithstanding by investigation they might have learned the truth. Davis v. Forman, 229 Mo. 48. (5) Where there are affirmative misstatements inducing action, an intention to deceive is not necessary to a rescission. Florida v. Morrison, 44 Mo. App. 538; Culver v. Smith, 82 Mo. App. 397; Smith v. Richards, 13 Pet. 34; Kell v. Trenchard, 142 Fed. 23; In re Am. Co., 173 Fed. 482. (6) A contract that appellant might settle respondents' claim at so much, is not a contract that he should keep all he might realize in excess of that figure. Turney v. Michael, 15 S. W. 912; Matheney v. Godin, 130 Ga. 713; Baysen v. Robertson, 70 Ark. 58; Walker, Real Estate Agents, Sec. 481. (7) An agency may be revoked at any time the principal so wills. State ex rel. v. Walker, 88 Mo. 279; Green v. Cole, 103 Mo. 71; Burke v. Priest, 50 Mo. App. 312; Mechem on Agency (Ed. 1889), Secs. 204, 207; 31 Cyc. 1294. (8) The agreement of April 7 was entirely without supporting consideration. Lingenfelder v. Brewing Co., 103 Mo. 593; MacFarland v. Hein, 127 Mo. 333; Glenn v. Hill, 210 Mo. 296; Dick v. Finnell, 39 Mo. App. 280; Moomaw v. Emerson, 80 Mo. App. 321; Wear v. Schmelzer, 92 Mo. App. 323; Grath v. Tile Co., 121 Mo. App. 249. (9) The finding of the trial court on questions of fact depending on oral testimony will not be overturned. Craemer v. Bivert, 214 Mo. 479; Huffman v. Huffman, 217 Mo. 191; Jones v. Thomas, 218 Mo. 540. (10) A

bill of interpleader is a proceeding in equity, and the ultimate right of the parties is the question for determination. Roselle v. Bank, 119 Mo. 92; Lodge v. Elsner, 26 Mo. App. 113; Whitney v. Cowan, 55 Miss. 647. And in this proceeding all the equities between the parties are to be adjusted. Hayden v. Railroad, 222 Mo. 135; Hayden v. Railroad, 117 Mo. App. 88; Paquin v. Milliken, 163 Mo. 105; Peak v. Peak, 228 Mo. 557. (11) Appellant's so-called obligation laid no additional burden upon him. R. S. 1909, Sec. 1867; Leahi v. Dugdale, 34 Mo. 99; Bidwell v. Ins. Co., 40 Mo. 27; Bank v. Stuart, 73 Mo. App. 279; Little v. Trust Co., 197 Mo. 293.    And respondents were not bound to surrender it. Moss v. Woodward, 155 Mass. 233. (12) Appellant's conduct does not commend his claim. Kline v. Hedges, 229 Mo. 169.


GRAVES, P. J.—Plaintiffs, executors of the last will of N. Helen Paramore, deceased, sued the Mercantile Trust Company, of St. Louis, for the conversion of eighty Cass county bonds of the par value of $1000 each. They asked for damages in the sum of $80,000, and accrued interest.

The said Trust Company filed answer by which it was made to appear that as to the bonds in controversy it was a mere stakeholder, and that the real contestants as to the ownership of the said bonds were plaintiffs and one James Campbell, and thereupon said company was discharged of liability in said action upon conditions named, not material here, and the said plaintiff and the said Campbell were ordered to file their respective interpleas for the said bonds, as well as the interest which had accrued and been paid thereon. Plaintiffs thereafter filed their said interplea thus:

"Now come plaintiffs, Fred W. Paramore and Edward E. Paramore, executors under the last will and testament of N. Helen Paramore, deceased, and

in accordance with the order of court heretofore entered in the above entitled cause, file this their interplea herein, 'and for said interplea say that as executors of the estate of N. Helen Paramore, deceased, they owned a judgment against Cass county, Missouri, upon which, on the first day of June, 1908, the amount due and owing to plaintiffs by Cass county was, with accrued interest, $88,905.75, and at the same time there was another unpaid judgment against Cass county, Missouri, which was rendered on the 5th day of June, 1899, for $170,629.16, and which drew interest from the date thereof at the rate of ten per cent and in which plaintiff had no interest."

"Plaintiffs say that the said county of Cass offered to settle and adjust the two said judgments by delivering, in satisfaction therefor, three hundred and ninety of its four per cent funding bonds, in the sum of one thousand dollars each, dated June 1, 1908, one-third thereof being payable at the option of the county any time after five years from the date thereof, one-third thereof being payable at the option of the county at any time after ten years from the date thereof, and one-third thereof being payable at the option of the county at any time after fifteen years from the date thereof, and all of said bonds falling due, if such option was not exercised, twenty years from the date thereof.

"Plaintiffs aver that they authorized and empowered the Mercantile Trust Company, the original defendant herein, to carry out for them the proposed compromise and to settle and satisfy their said judgment and to receive payment therefor in the aforesaid issue of bonds, and that the holder of the other judgment aforesaid against Cass county conferred upon the Mercantile Trust Company like power and authorization with reference to that judgment; and thereupon the Mercantile Trust Company settled and satisfied said two judgments and received from Cass

county in payment thereof said three hundred and ninety bonds; that in accordance with this settlement, these plaintiffs were entitled to receive of said issue of bonds, in satisfaction of their judgment, 94.4 per cent of the total amount due upon said judgment, with interest on the first day of June, 1908, but that the holder of the other judgment aforesaid claimed to have incurred certain expenses in connection with said compromise, and because thereof these plaintiffs authorized the Mercantile Trust Company to deliver to the plaintiffs only eighty thousand dollars of the bonds to which they were entitled under said settlement, and to deliver the excess thereof over eighty thousand dollars to the holder of the other judgment, and thereupon, on receipt of said bonds, said Mercantile Trust Company settled with the holder of the other judgment aforesaid in accordance with the authorization aforesaid from these plaintiffs, retaining the eighty thousand dollars of bonds here in controversy as applicable to the settlement of the plaintiff's judgment aforesaid, and delivering all of the three hundred ninety bonds, except the eighty here in controversy, to the holder of said other judgment.

"Plaintiffs say that on December 1, 1908, sixteen hundred dollars, being the amount of the interest coupons then falling due on said eighty bonds here in controversy, was collected by the said Mercantile Trust Company, and that said eighty bonds and the said sixteen hundred dollars interest accruing thereon are the eighty bonds and the sixteen hundred dollars in cash which have been paid over by the Mercantile Trust Company to the St. Louis Union Trust Company as depository of this court under the order of interpleader heretofore entered in this cause.

"Wherefore the plaintiffs pray that they be awarded judgment for the delivery of said eighty bonds and said sixteen hundred dollars and all interest accruing thereon, and all interest that may here-

after accrue on said bonds, for cost herein and for such other and further relief as to the court may seem meet and proper in the premises.''

The interplea of Campbell, upon which the cause was tried, thus runs:

''I. Now comes James Campbell, who has been ordered to interplead in this case, and file this his amended answer and interplea in said case, in accordance with the order of the court heretofore entered of record herein, and, for answer to the interplea of the plaintiffs, Frederick W. Paramore and Edward E. Paramore, as executors under the last will and testament of N. Helen Paramore, deceased, denies each and every allegation contained in said interplea.

''And, having fully answered said interplea, this interpleader prays for judgment with costs.

''II. And this interpleader, in accordance with the order of the court heretofore made and entered of record in this cause, requiring him to interplead herein, now files this his amended interplea and claim for the eighty Cass county funding bonds of the par value of eighty thousand dollars and for the sixteen hundred dollars in cash, being the interest represented by the coupons due upon said bonds on the first day of December, 1908, which bonds and money are now in the custody of the St. Louis Union Trust Company as a depository of this court; and as and for his interplea and claim for said bonds and said money, this interpleader says:

''1. That at the time of her death, N. Helen Paramore was the owner of a certain judgment recovered by her against the county of Cass, State of Missouri, on the 20th day of May, 1903, in the circuit court of the United States for the Western Division of the Western District of Missouri, which judgment was for the aggregate sum of $61,072.19, of which amount

the sum of $14,358.76 bore interest at the rate of six per cent per annum, and the sum of $46,713.43 bore interest at the rate of ten per cent per annum from the date of said judgment. That said judgment was recovered upon two former judgments which had been theretofore recovered by the said N. Helen Paramore, against the said county of Cass, State of Missouri, upon certain bonds and coupons theretofore issued by said Cass county in aid of and payment for the capital stock of the Clinton and Kansas City branch of the Tebo and Neosho Railroad Company, which bonded indebtedness, long prior to the rendition of said judgment, had been repudiated by said county of Cass, and the same, as well as said judgments, the said Cass county had for many years prior to the death of the said N. Helen Paramore absolutely refused to pay.

"2.  That on and prior to the 30th day of March, 1908, there existed against the said county of Cass another judgment which had theretofore been recovered upon other bonds of said county, issued by said county in aid of, and payment for the capital stock of the Clinton and Kansas City branch of the Tebo and Neosho Railroad Company, which judgment and indebtedness had long prior thereto been repudiated by said Cass county; and that this interpleader, on or about the 30th day of March, 1908, had authority to compromise and settle said other judgment, and, having such authority, he entered upon negotiations with the plaintiffs herein for the purpose of obtaining a contract from them authorizing him to settle the judgment hereinabove described, which had been recovered in favor of N. Helen Paramore, as herein above stated.

"That on or about the 10th day of April, 1908, the plaintiffs herein, for and in consideration of the promise and agreement made by this interpleader that he would, in the event that the county of Cass would issue its four per cent funding bonds in settlement of all the then outstanding judgments against said coun-

ty, hereinabove mentioned, deliver to the plaintiffs $70,000, par value, of said funding bonds of said county, the plaintiffs entered into a written contract with this interpleader in and by which the plaintiffs agree to accept from this interpleader such bonds in full settlement and discharge of the judgment theretofore recovered by the said N. Helen Paramore against said county, above mentioned. That said contract consisted of a letter and proposition made by this interpleader to the plaintiffs herein, under date of April 7, 1908, and their acceptance thereof by telegram dated April 10, 1908, copies of which are hereunto annexed and marked Exhibits A. and B.

"3. That thereupon and thereafter, this interpleader, under and in pursuance of the terms of said contract between the plaintiffs and this interpleader, did deliver unto the plaintiffs his written obligation to turn over and deliver to them seventy thousand dollars, par value, of the four per cent funding bonds of Cass county, if such compromise was effected between this interpleader and the judges of the county court of Cass county; and that the plaintiffs herein have never returned said written obligation to this interpleader.

"4 That thereupon, and in accordance with and pursuance of said written contract, this interpleader made a proposition for the settlement and compromise of said judgments to the judges of the county court of Cass county, and thereafter such proceedings were had that the judges of the county court of Cass county were duly authorized, according to law, and did compromise and settle said judgments and did issue the funding bonds of said county of Cass, bearing interest at the rate of four per cent per annum; and that the said judges of the county courts of Cass county delivered all of said bonds, issued to settle and compromise said judgments, to the Mercantile Trust Company of the city of St. Louis, to be held by said company in

trust, until said judgments, and each of them, against the county of Cass, were satisfied of record in the said circuit court of the United States for the Western Division of the Western District of Missouri; and that, upon satisfaction of said judgments having been so entered on the records of said court, the said Mercantile Trust Company should deliver all of said bonds to this interpleader.

"5.  And this interpleader further states that thereafter the said Mercantile Trust Company caused satisfaction of all said judgments to be entered of record in the said circuit court of the United States, and that thereupon this interpleader directed the said Mercantile Trust Company to deliver to the plaintiffs herein seventy of the said bonds, in accordance with the terms of his contract with said plaintiffs, herein above referred to, upon the delivery of said Trust Company of the written obligation of this interpleader theretofore delivered by him to the plaintiffs herein; and said plaintiffs thereupon refused to accept said seventy bonds, and also refused and neglected to deliver back to this interpleader his said written obligation, and that they have not hereto surrendered said obligation to this interpleader.

"Wherefore, this interpleader states that he is entitled to the possession of said eighty bonds, and also to the possession of said sum of sixteen hundred dollars now held by the St. Louis Union Trust Company as a depository of this court, and that the plaintiffs are not entitled to the possession thereof, nor in any event to the possession of more than seventy of said bonds.

"Wherefore, this interpleader prays for judgment requiring the said St. Louis Union Trust Company to turn over and deliver to this interpleader all of said bonds and said sum of sixteen hundred dollars, and for such other and further relief as the nature and

circumstances of the case may require, and for his costs in this behalf expended.''

The letter and the answer thereto referred to in this interplea, read thus:

St. Louis, Mo., April 7th, 1908.

Mr. Edward E. Paramore,
          c/o The Houston River Canal Co,
                    Sulpher, La.

My Dear Ed:—

In my negotiations with Cass county, for a settlement of the old 10 per cent debt, it is overlooked that the two judgments in the name of N. Helen Paramore, rendered May 16th, 1895, and November 18th, 1896, had been revived and renewed on May 20th, 1903, and carried with them interest since that time, in excess of what the original judgment would figure, of about $14,000. The two judgments figured to June 1st, 1908, would amount to $77,731.74, as against $91,700, if figured from the date of revival.

This oversight was discovered after negotiations had progressed up to where they were asking for petitions for an election authorizing the issuing of bonds in settlement of the judgments.

I have now agreed with them, that if they would issue a 4 per cent bond, instead of a 3 1-2 per cent bond, as first talked about, that we would figure the interest on the two judgments, straight from May 16th, 1895, and November 18, 1896, to June 1st, 1908, which amounts to $77,731.74, which at 90 cents on the dollar, will give you $70,000 in new 4 per cent bonds. This will be about as broad as it is long, figuring a 4 per cent bond as against a 3 1-2 per cent, as 3 1-2 per cent would not bring over 90 cents in the market, while the 4 per cents will readily bring par.

I have written to the clerk of the court of Kansas City, asking for a transcript of your judgments as they now stand of record, as the county officials require an assignment of all the judgments in blank, to be deposited with the Mercantile Trust Company, under the compromise agreement, as evidence of good faith on my part, before a vote is authorized and as soon as I receive the transcript, will forward it to you for the signature of the Paramore Bros. Will also send you my obligation to deliver you $70,000 Cass County, Missouri, 4 per cent funding bonds in full settlement for the judgments you hold against Cass county, should the proposition before the county carry.

Fearing that you would not have with you, a copy of your authority to me, I herewith enclose a copy of same for Fred's inspection, which shows that we describe the judgments as dated May 16th, 1895, and November 18th, 1896.

Please wire me on receipt of this, that the settlement with the county as outlined in this letter, will be satisfactory to you, if carried, as I must answer before the petitions are sent out for

signatures, which will be Thursday or Friday of this week, if at all, at this term.

Yours respectfully.

JAMES CAMPBELL.

The telegram in reply reads:

Sulphur, Louisiana, April 10th.

James Campbell,

Will accept statement (sic) Cass County judgments basis of your letter April 7th.

PARAMORE & CO.

To the interplea of Campbell the plaintiffs answered in this language:

"And now comes the plaintiff interpleaders herein, and, for answer to the interplea of James Campbell, aver that as executors of N. Helen Paramore they were the owners of the judgment described, against Cass county, and that on or about the 7th day of April, 1908, they authorized and empowered James Campbell as their agent and representative to settle the same for $70,000 in Cass county refunding bonds, which is the contract pleaded by James Campbell in his amended interplea; and deny each and every other allegation therein contained.

"And, for other and further answer, plaintiffs say that prior to April 7, 1908, they had authorized and empowered James Campbell as their agent and representative to settle and compromise their said judgment at 90 per cent of the amount due thereon and payable in Cass county refunding bonds bearing interest at not less than 3½ per cent per annum; that at that time Campbell was, and claimed to be, interested in another judgment against Cass county standing in the name of one L. L. Nunn; that Campbell thereupon, without the knowledge of the plaintiffs, made a proposition to Cass county to settle the claim of these plaintiffs and also the Nunn judgment for the aggregate sum of $390,000, payable in Cass county refunding four per cent bonds; that these plaintiffs at no time had any knowledge or information as to

the negotiations or transactions between James Campbell and Cass county except as disclosed to them by him; that the foregoing proposition from James Campbell to Cass county was pending for submission to the voters of Cass county as a proposition for the settlement of said two judgments on April 7, 1908, and that apportioning this $390,000 to the judgment of the plaintiffs and to the Nunn judgment it was sufficient to pay 94.4 per cent of the amount due upon each, principal and interest, and that James Campbell procured from these plaintiffs the authority pleaded to settle their said judgment for $70,000 in bonds by concealing from them the fact that he had then proposed and then expected to be able to really settle the same at 94.4 per cent of the amount due thereon, principal and interest, according to the terms of said judgment, and that by reason of said concealment, and by reason of their ignorance of the real facts and the real amount that Campbell intended and expected to realize from said settlement, the plaintiffs were induced to authorize him as aforesaid to settle the same for $70,000 of said refunding bonds; and as a matter of fact the plaintiffs say that the original settlement, as originally proposed, was carried out and that the bonds issued by Cass county, in settlement of said two judgments, appropriated between them in the amount due and owing thereon, paid and was sufficient to pay, upon the plaintiff's said judgment, 94.4 per cent of the amount due thereon, principal and interest, and much more than $70,000.

"And for other and further answer, plaintiffs say that having as aforesaid authorized the said James Campbell to settle their said judgment at ninety per cent of the amount thereof, payable in Cass county three and one-half per cent refunding bonds, and the said James Campbell having as aforesaid proposed to said county to settle the same at 94.4 per cent of the amount thereof, principal and interest, payable in

Cass county four per cent refunding bonds, and the said James Campbell being then engaged in prosecuting said proposition to a vote by the citizens of Cass county, and these plaintiffs being as aforesaid ignorant of the actual proposition which he had made to the county for the settlement of their said debt, on April 7, 1908, and in order to induce these plaintiffs to agree that he might settle their judgment at $70,000, said James Campbell falsely and fraudulently represented to the plaintiffs that he had agreed with Cass county that if Cass county would issue a four per cent bond instead of a three and one-half per cent bond that the amount of the plaintiffs' claim and demand upon its judgment would be reduced by figuring interest thereon straight from the rendition of the original judgment therefor, the difference in this regard being something over $10,000; that as a matter of fact Campbell never had, and never did make, any such proposition to Cass county, and never intended to, his proposition being by the false and fraudulent representations to induce these plaintiffs to agree to reduce the amount payable upon their judgment, to the end that a larger amount might accrue upon the Nunn judgment out of the proposed settlement and thereby to the personal benefit of the said James Campbell, or that he might individually acquire the payment upon plaintiffs' judgment in excess of $70,-000; and these plaintiffs having no information regarding said settlement, save such as was furnished to them by James Campbell, were induced to, and did, authorize him to settle said judgment at $70,000 of said bonds in reliance upon his representations aforesaid, which were untrue and were made with the intention to deceive the plaintiffs, and which did deceive them; and, as a matter of fact, the plaintiffs say that the original settlement, as originally proposed, was carried out and that the bonds issued by Cass county in settlement of said two judgments appropriated be-

tween them in the proportion of the amount due and owing thereon, paid, and was sufficient to pay, upon the plaintiffs' said judgment 94.4 per cent of the amount due thereon, principal and interest, and much more than $70,000.

"And, for another and further answer to said interplea, plaintiffs say that after James Campbell had made the proposition aforesaid to Cass county for the settlement of said two judgments for $390,000 of her four per cent bonds, and after said proposition had been accepted by the county court of that county, and prior to the issuance and delivery of said bonds by Cass county in pursuance of said settlement, these plaintiffs for the first time ascertained that James Campbell had never at any time made any proposition to Cass county for the settlement of plaintiffs' said judgment independent of any other claim or demand, but that in truth and in fact he was settling the two judgments for an aggregate bond issue of, to-wit, $390,000, being 94.4 per cent of the amount due on each demand, principal and interest, and had never made any agreement with Cass county that if they would issue a four per cent bond instead of a three and one-half per cent bond that he would figure the interest of the two original Paramore judgments straight; and thereupon a controversy arose between these plaintiffs and James Campbell as to what bonds and what amount of bonds these plaintiffs should receive in satisfaction of their said judgment, and it was then agreed between the plaintiffs and James Campbell, in settlement of said controversy and dispute, that the plaintiffs should receive of said bond issue $80,000, being the eighty bonds here in controversy, the additional 4.4 per cent accruing to the plaintiffs being claimed by Campbell and allowed to him by the plaintiffs on account of expenses which he claimed to have incurred in the prosecution of said settlement; all of said bond issue was delivered by Cass county to the

Mercantile Trust Company to be by them delivered to the parties entitled to receive the same; and plaintiffs allege that in pursuance of the foregoing agreement of compromise, James Campbell actually received from said Mercantile Trust Company, and appropriated to his own use the 4.4 per cent of the plaintiffs' judgment is such bonds, under and in accordance with this compromise agreement.''

Campbell then further pleads as follows:

''Now comes James Campbell, the adverse interpleader, and replying to the answer of Frederick W. Paramore and Edward E. Paramore as executors of the last will and testament of N. Helen Paramore, deceased, specifically denies that said Paramores, or either of them, authorized or empowered him as their agent or representative to settle any judgment or judgments against Cass county, and specifically denies that he did, as the agent or representative of said plaintiff interpleaders, settle or compromise any judgment against said county; and further replying to said answer of said plaintiff interpleaders, this interpleader denies generally each and every other allegation contained in the answer.''

Upon a hearing *nisi* plaintiffs were adjudged to be the owners of the bonds, as also the owners of the $1600 interest which had accumulated and been paid thereon, and it was further adjudged and decreed as follows:

''It is therefore ordered, considered, adjudged and decreed by the court that the plaintiffs interpleaders, Fred W. Paramore and Edward E. Paramore, executors under the last will and testament of N. Helen Paramore, deceased, to have and recover the eighty bonds aforesaid, together with the interest collections and funds aforesaid, and that the St. Louis Union Trust Company, the court's depository under its pre-

245 Mo.—20

vious order, pay and surrender the same to them and thereupon stand discharged.''

The bonds and the $1600, then accrued and paid interest, was under the first order of the court turned over to the St. Louis Union Trust Company by the Mercantile Trust Company at the time the latter company was discharged from the case.

From this judgment Campbell has appealed to this court. Points made will be noted in the opinion, together with the relevant facts bearing thereon.

I. In this case we can well dispense with the interplea as filed by the plaintiffs, because the issues in the case are raised by subsequent pleadings. Campbell in his interplea pleads a contract as the basis of his title. Plaintiffs in an answer or reply to such interplea in effect admit the contract, and seek to avoid it by pleading that it was fraudulently procured. The issues are thus made by these and subsequent pleadings, and the general allegations of the plaintiffs' interplea come to naught in this state of the record. In other words, the plaintiffs in their pleadings in effect admit that there was a contract made by and between the parties, by the Campbell letter on April 7 and their telegram of April 10. By the evidence it is shown that the word ''settlement'' was in the telegram instead of the word statement, and that the parties acted upon the telegram so understanding it. But whilst they admit a contract thus made, they plead matters in avoidance thereof, chief of which is fraud in the procurement thereof.

II. A material matter in the disposition of this case is the relation of these parties. Plaintiffs claim that Campbell was their representative, or agent, and that therefore they were not dealing with each other at arm's length, but that there was a confidential relationship. Campbell and his counsel are *contra*. If

the letter of April 7 and the instrument of writing therein referred to, when taken with the reply telegram, makes a contract unambiguous upon the face thereof, we must gather the relationship of the parties from the written instruments, but if they are ambiguous, then we may resort to extraneous circumstances to get the proper construction of the contract contained in the three written instruments. It is clear from this letter of April 7 that it requires the consideration of three written instruments to get at the contract, i. e., (1) the letter of April 7, (2) the telegram answering it, and (3) the written instrument referred to in the letter, which written instrument, omitting therefrom the description of the two judgments in favor of N. Helen Paramore against Cass county, is as follows:

St. Louis, March 12, 1908.

Mr. James Campbell,
    Commonwealth Trust Building,
        City.

Dear Sir:

We hereby give you the option to settle the following described judgments against Cass county, Missouri, viz.: [description omitted] at ninety per cent of the principal and interest, we agreeing to take bonds or cash as you may elect, such bonds to bear interest at the rate of not less than three and one-half per cent per annum.

This option is good and shall remain in full force until January 1st, 1909.

PARAMORE BROS. & CO.

The letter and telegram we have set out in full in the statement of the case. As said, plaintiffs construe these instruments as creating an agency, whilst Campbell denominates it an option contract. We think the written instruments are ambiguous enough to admit evidence *aliunde* in order to get the proper construction thereof. On this theory we revert to further facts.

The day after the telegram of acceptance, Campbell thus wrote the plaintiffs:

St. Louis, April 11, 1908.

Mr. E. E. Paramore,
        Care Houston River Canal Co.,
                Sulphur, La.

My dear Ed:

Enclosed I hand you blank form of assignment of your judgment against Cass county. Please sign same and have acknowledged before a notary as shown in the blank form and return to me, as I am obliged to deposit same with the Mercantile Trust Company, as well as the judgment of L. L. Nunn, which I have already deposited. I also enclose my contract to you as agreed under my letter of April 7th, 1908. The actual figures to June 1st, 1908, on your judgment, shows the amount due to be $88,889.67 instead of $91,798.00 as mentioned in my letter. Please return the assignment at an early date as possible for reason given above.

Yours respectfully,

JAMES CAMPBELL.

P. S.—If the notarial form is not in accordance with the laws of Louisiana, please have your notary change it so as to conform with your laws and greatly oblige.

With this letter were, (1) a form for an absolute assignment of the Paramore judgment, with the name of the assignee left blank, and (2) Campbell's written obligation to pay in these words:

St. Louis, April, 11, 1908.

I hereby agree to pay to Paramore Bros. and Company on demand (after the funding bonds are delivered to me, under my proposition for settlement to said Cass county) seventy $1,000 Cass county, Missouri, 4 per cent funding bonds, same being in full for judgment obtained in the circuit court of the United States for the Western District of Missouri, in the name of N. Helen Paramore and being case No. 2747, against Cass county, Missouri, amounting to $61,072.76 on May 20th, 1903.

JAMES CAMPBELL.

This obligation plaintiffs retained up to the date of trial. Nor should it be overlooked that the blank assignment and the written obligation both went with the same letter.

When the Paramores executed the assignment they made the Mercantile Trust Company assignee, because as one of them said he did not want a blank assignment to go out. The assignment was returned with this letter:

THE BOSTON CLUB,
NEW ORLEANS.

April 20, 1908.

The Mercantile Trust Company,
    8th and Locust Streets,
        St. Louis.

Gentlemen:

Enclosed we hand you assignment of judgment 2747 recovered May 20th, 1903, by our mother, N. Helen Paramore, deceased, against the county of Cass, State of Missouri, in accord with an agreement with James Campbell of St. Louis, by which if said judgment is settled by the county in four per cent bonds he is to deliver seventy thousand dollars, par value, of said bonds before July 1st, 1909, or as soon as they can be issued, free and clear of all expenses to us; if said county refuses to vote such settlement this fall, said assignment is to be returned to us without having been recorded by you without any expense to us. This agreement to be entered into by you, James Campbell and ourselves before any disposition is made of same, other than a notice to the court officers that the assignment is held in trust by you pending the vote of the county to settle said judgment at ninety per cent of their face in four per cent bonds.

Very truly yours,

F. W. PARAMORE,

Administrators N. Helen Paramore, Deceased.

Later this assignment was in fact superseded by one in blank as first suggested by Campbell. It will be observed that the plaintiffs were impressed with the idea that what they should receive should be net to them, and this calls for further facts in the case.

Prior to 1903, Mrs. Paramore had two judgments against Cass county. These are properly described in the writing of March 12, 1908. It was discovered later that she had in 1903 merged the two judgments into one judgment which is properly described in the assignment, supra. The information of the merged judgment came to Campbell in a letter from his attorney, D. C. Bernett of Harrisonville, of date April 5, 1908. One Nunn also seems to have had a judgment for over $170,000 against Cass county, which Campbell owned or controlled. Prior to the dates herein before discussed, and even during the lifetime of Mrs. Paramore, the Paramores and Campbell had been trying to get a settlement of their judgments. The situation

of these judgments is almost a matter of Missouri history. We need not go to history, however, because the evidence discloses that the owners of them and other judgments had been unable to collect them. In the previous attempt to settle Campbell and the Paramores had borne the expenses, pro rata. From the Paramore letter, supra, it would seem that they were not so proceeding at this time. They say that they are to be at no expense.

It would seem that after much talk with a citizens' committee in Cass county, Campbell on March 30, 1908, submitted a proposition to settle the two Paramore judgments and the Nunn judgment for $390,000 in four per cent bonds of $1000 each. For years and up to this date, there had been discussed a three and one-half per cent bond, as well as a four per cent bond. After this proposition of March 30 was made by Campbell, but before a petition for its submission was circulated for signers, the merged judgment was discovered, and the letter of April 7 and the other matters stated follows. Campbell then so amended his proposition that his original proposition should cover the cancellation of the merged judgment. The county had required him to have the Mercantile Trust Company guarantee that he would faithfully carry out the proposal of March 30 and also had a similar guaranty made for the amended proposal. The voters accepted the proposal at an election held May 23, 1908.

On or about June 6, 1908, the Paramores discovered that Campbell had recently gotten 94.4 per cent of the Nunn and two old Paramore judgments in the settlement, and subsequent letters and conversations passed, but for the purpose of the point now in hand, they may well be omitted. In other words, if we cannot find out what relation the parties bore to each other, by the things done and said prior to the election, we should not look to matters occurring after

the dispute arose, only so far as they necessarily bear and throw light upon that which went before. The question now is, do these things show a contract of agency, or do they show an optional contract of sale? In my judgment they show the latter. The sale of course was conditional upon a settlement with the county. Let us look at the facts.

First, it is clear that the Paramores understood that Campbell was to bear all the expenses of an effort to procure the settlement. This does not bear out the idea of agency. Not only does it appear from the Paramore letter that they understood that they would be at no expense, but one of them testifies that at the beginning Campbell proposed to pay the expenses, and he adds that this proposal should have aroused their suspicion. The record shows that the actual expenses of this work was something like $16,-000, and yet the Paramores contend that Campbell was merely their agent. It is true that after the settlement they talked of paying their part, but this belated generosity does not change the situation. It is clear from all the writing and from all their acts, that they never understood that they were to prorate the expenses this time as they had done on previous occasions. On the other hand it is clear that they understood that Campbell was to be at all of the expenses of the effort to settle, whether such effort was successful or not. This we again affirm is at war with the idea that Campbell was acting for them in any kind of a fiduciary capacity. It is, however, in harmony with the idea that they had agreed to take ninety per cent of their judgment in bonds bearing not less than three and one-half per cent, or in cash, as Campbell might elect, but Campbell was not to be bound to take under the option unless a settlement was procured with the county. To our mind the whole thing can be summed up thus: Paramores say to Campbell, If you can at your own expense procure a

settlement with Cass county, we will let you have our judgments at ninety cents upon the dollar, and take our pay in either bonds or cash as you may elect, but if in bonds they must not bear less than three and one-half per cent interest. This leaves the whole terms of settlement with Campbell, except that if he wanted to pay them in Cass county bonds, he could not agree to bonds bearing less than three and one-half per cent. In fact, under this agreement Campbell could have put in the Paramore judgments at less than ninety per cent, and made the interest less than three and one-half per cent, but he would then have had to pay the Paramores ninety per cent of the two judgments and paid them in cash, because he could not pay in bonds. We refer now to the option agreement of March 12, as such instrument must be construed by the action of the parties, and other matters *aliunde*. We therefore conclude that the real understanding and contract between the parties was to the effect that if Campbell could procure a settlement at his own expense, the Paramores were to let him have and use their judgments at ninety cents on the dollar. This is not the relation of principal and agent. It is the act of parties dealing at arm's length. The law touching the delicate relation of fiduciary relationship, therefore, would have no place in the case. For this reason we can approach a discussion of the modification of the contract, if in fact there was a modification, as made by the letter of April 7 and the telegram of April 10, 1908, without being embarrassed by the law applicable to fiduciary relations.

III. As indicated above after much discussion between Campbell's attorney Mr. Barnett, and the citizens' committee, Campbell determined to submit a proposition to the county of taking 390 four per cent bonds of the par value of $1000 each for all three judgments, i. e., the two Paramore judgments and the

Nunn judgment. This proposition was prepared by Campbell on March 30. In our view of the situation, he could have made his proposition for 290 bonds as well as for 390, so far as it affected the Paramores. He would have been obliged to pay the Paramores ninety per cent of their judgments as the same was fully described in the instrument of March 12, and the loss would have been taken up by the Nunn judgment, then owned by Campbell. But Campbell was not looking for a loss, and he proposed to settle all the judgments for 390 bonds, as he had the right to do, although such amount was in fact 94.4 per cent on the three judgments. At this juncture, and before any petition had been circulated to get signers, so that the county court could make an order submitting the proposition to a vote of the people, it was discovered that the two Paramore judgments, described in the contract of March 12, had been merged into one judgment in 1903, and in this way interest was made to bear interest and the amount of the Paramore claim was greater, if the last judgment was to be taken as the basis, rather than the two judgments fully described by the parties in their writing of March 12. It was thought advisable to have this last judgment mentioned in the proposal of settlement. It was feared that the voters might think that all of the judgments were not being settled, and thus vote against the proposed settlement. When Campbell was informed of this merged judgment he immediately wrote the letter of April 7. We think that this letter was more a precautionary step than anything else. Campbell by the instrument of March 12 had the Paramore claim whatever it was, by paying them ninety cents on the dollar for the amounts of the two separate judgments, and upon paying that could have forced an assignment of all the claims. But whilst the letter was as indicated, yet it in a way modified the original contract, in that it fixed the Paramore compensation at

$70,000 in four per cent bonds, and eliminated the right of Campbell to pay in cash. The terms of this letter were accepted by the telegram of April 10, and the modified contract became complete. On the strength of it Campbell modified his proposal to the county. Can the plaintiffs now avoid this express agreement to take $70,000 in bonds? We think not. First, it is in amount ninety per cent of the two judgments and this was the basis of the agreement of March 12. The Paramores now say that they told Campbell before the agreement of March 12 that they must have renewed their judgment. If so, they should not have entered into their said agreement. They urge now that they were deceived by the letter of April 7, in that they understood therefrom that the county had proposed three and one-half per cent bonds, and that Campbell had induced the county to make the bonds four per cent by taking as the basis of settlement the two original Paramore judgments rather than the last or merged judgment. There are several reasons why this position is not tenable. First, by their agreement of March 12 they had already made the two judgments the basis of their settlement with Campbell. They were not settling with Cass county. The letter did not change the basis of settlement with Campbell, unless it be in some paltry sum. But the facts show further that there had in fact been under consideration both rates of interest until March 30, and Campbell but told the truth in this letter. He had concluded to demand four per cent bonds, on the one hand, and the citizens' committee, which was favorable to a settlement, wanted the proposal amended so as to make it plain as to the merged judgment, to the end that the vote on the proposal might be favorable. We think that this alleged misleading by the letter is an afterthought—one occasioned by finding that Campbell had in fact settled at 94.4 per cent and not at ninety per cent or less. Of course had Camp-

bell settled at less than ninety per cent, which he could have done, and made the loss fall upon the other judgment owned by him, there would have been no such afterthought. The Paramores would have demanded their seventy bonds and would have received them. If we are right in our conclusions as to the relations between these parties, as indicated in our paragraph two, then Campbell owed the Paramores no duty to disclose to them the terms of his settlement with Cass county. They had given him an "option" as stated in the written instrument of March 12, on their claim as evidenced by two named and described judgments, at ninety per cent on the dollar. The option was conditional of course upon the procurement of a settlement with the county, which should be procured by Campbell at his own expense.

But beyond all this, the letter of April 7 does not change the basis of settlement, so far as amount is concerned. The ninety per cent on the two original Paramore judgments is still preserved. The changes actually made are favorable to the Paramores in this, that it is there fixed that the bonds shall bear four per cent, whilst previously they might have been made to bear only three and one-half per cent.

So we repeat that if the matter of a fiduciary relation is not in the case, then it is one of easy solution. We have held above that there was no such relation. This we have gathered from all the facts. There are things upon both sides which tend to show such relation, but more that tend the other way. With such relationship out of the way there is nothing in the letter of April 7 that justifies any relief for the plaintiffs.

IV. But even if it be granted that there was such a relation, and that thereby there was conduct upon the part of Campbell which would authorize plaintiffs to rescind the contract made by the letter of April 7 and the telegram of April 10, yet such con-

tract is not void, but only voidable. Plaintiffs admit that contract, but aver that it was fraudulently procured. In terms they do not ask for its rescission, nor should they be permitted to have a rescission thereof, without doing equity. Campbell's obligation to deliver $70,000 in bonds, they hold. They do not offer to pay back to Campbell their proportionate part of the cost of procuring the settlement. In other words, so far as the pleadings go they offer to do no equity. We shall not pursue this proposition, because an elaboration thereof is not justified by our previous views on the other theory of the case.

V.   One of the defenses made was that of a settlement of the dispute between Campbell and the Paramores.   The Paramores say that after the dispute arose they met Campbell and they agreed to turn over to Campbell the 4.4 per cent of the aggregate sum as their part of the costs of procuring the settlement, and he agreed to let them have the remainder of the bonds. Campbell denies this and says that the only thing he ever did was to agree to give the Paramores an order for all the bonds, so that they could take them down from the Trust Company, but that they were to turn over ten of them to him. Campbell was about leaving the city at the time and before so doing prepared the order as above mentioned, together with a duebill for ten bonds to be signed by the Paramores, and left both instruments with his bookkeeper. Upon his return' the Paramores or one of them called, and when he presented both papers for signatures and delivery Paramore refused to sign. It is quite evident that there was no settlement either in law or fact. The parties evidently never got together on a settlement of a disputed claim. In addition it should be further suggested that the Paramores never attempted to carry out this alleged settlement. We do not think that the record discloses a formal settle-

ment of a disputed claim, and this contention should be ruled against the plaintiffs.

VI.  Campbell urges that under any view of the case he is entitled to the possession of all the bonds. That the whole transaction between the parties contemplated the delivery of the bonds to him, and a distribution of them by him.  That for that reason plaintiffs have failed to establish any legal right to the possession of the bonds or any part thereof.  We need not decide whether or not there is substance in this contention.  When the course of the trial below is considered, it is to be seen that such was not the theory *nisi*.  The sole contention below was whether the plaintiffs were entitled to the eighty bonds or seventy bonds.  Campbell had offered to deliver or have delivered to them seventy bonds, if they would receipt in full.  This they refused to do, and brought this action.

Viewing the contract as we do, the plaintiffs were only entitled to seventy bonds with the paid and accumulated interest thereon, and Campbell was entitled to the other ten.  To the end that the case may be finally determined, we will reverse the judgment and remand the cause with directions to the lower court to enter up a judgment in conformity to these views. All concur.